THE GOLDEN GATE.

ATLANTIC COAST STEAMBOAT CO. v. THE GOLDEN GATE.

(District Court, D. New Jersey. July 13, 1893.)

1. SALVAGE—WHAT AMOUNTS TO SALVAGE SERVICE.

The steamer Golden Gate, while proceeding to her wharf at Atlantic City, having become disabled by the breaking of her rudderhead, at about 2 o'clock P. M., cast anchor, and signaled for help. The sea at the time was rough, and the wind blowing from the northeast at the rate of 20 or 25 miles an hour. The steamer Atlantic City, then lying at her wharf, about a mile distant, in response to the signals, proceeded to the assistance of the disabled vessel, and, after several attempts to tow her, cast loose, and left her in her original position. *Held*, that the assisting vessel, having failed to render any successful service, was not entitled to salvage.

2. SAME—TOWAGE SERVICE—STALE CLAIM.

Subsequently, at the request of the owner of the disabled vessel, the Atlantic City again proceeded to the assistance of the Golden Gate, which

was not then in peril, the sea then having become quite calm, and the wind having moderated, and, after towing the Golden Gate about one-half or three-quarters of a mile, noticing the approach of a sister steamer of the disabled vessel, belonging to the same owner, the towing steamer cast off, and rendered no further service. No claim for service was then made, but, a difficulty having arisen between the owners of the two vessels about a year thereafter, the owner of the Atlantic City claimed $500 for salvage. *Held,* that while the claim did not commend itself as a just and fair demand, yet the owner of the Atlantic City was entitled to be paid for towage service, the amount of which, if the parties failed to agree as to the same, should be ascertained by a reference.

In Admiralty. Libel by the Atlantic Coast Steamboat Company against the steamer Golden Gate for salvage service. Decree for libelant.

H. H. Voorhees, for libelant.
A. Hugg, for claimant.

GREEN, District Judge. From the evidence in this cause it appears that the steamer Golden Gate, on the 27th June, 1891, at about 2 o'clock in the afternoon, while proceeding to her wharf at Atlantic City, N. J., had the misfortune to break her rudderhead, and so rendered her rudder unmanageable and useless. At the time the sea was quite rough, and the wind was blowing from the northeast at the rate of 20 or 25 miles per hour. As soon as the accident occurred she let go her anchor in about 12 or 14 feet of water, and was immediately brought to. She anchored about 25 yards away from a sand bar, which lies nearly opposite the channel buoy. As soon as she was brought to by the anchor, she either blew her whistle frequently, as testified by some of the witnesses, or hoisted her flag, as testified by other witnesses, as a signal that she needed assistance. The whistles were heard or the signal was seen by the Atlantic City, a steamer lying at one of the wharves at Atlantic City, and about a mile distant from the Golden Gate. She immediately went to the assistance of the Golden Gate, and after some effort succeeded in getting a hawser to her; but for some reason, concerning which there are contradictory statements, she was unable to tow her. After one or two trials the hawser was cast loose, and the Atlantic City returned to her wharf, leaving the Golden Gate where she found her, and without rendering any assistance. Later in the afternoon the owner of the Golden Gate made a special request of the captain of the Atlantic City to tow his disabled vessel up to her wharf. By this time the sea had become quite calm, and the wind had greatly moderated. The Atlantic City again went to the Golden Gate, without difficulty passed a line to her, and then towed her about one-half or three-quarters of a mile towards her wharf, when, noticing that the Florence, a sister steamer to the Golden Gate, and belonging to the same owner, was coming down to tow the Golden Gate, the Atlantic City cast off the towing hawser, and rendered no further service. At the time no claim for service rendered was made by the Atlantic City, but 12 months after, a difficulty having arisen between the

owners of the two steamers, the Atlantic City made a claim of $500 in the nature of salvage.

It will be noticed that the first effort to assist the Golden Gate was a failure. The Atlantic City, from some cause, was unable to tow her to her wharf. At the time this effort was made the Atlantic City was a volunteer, and, had it been attended with success, it would have been the basis of a claim for salvage, assuming that the Golden Gate was within reasonable apprehension of danger. But an indispensable ingredient of a salvage claim is that the service rendered has contributed immediately to the rescue or preservation of the property in peril. Salvage compensation will not be decreed unless the vessel in fact was saved by those who make the claim. While attempts at rescue are meritorious, and to be highly commended, yet, unless success follow the attempt, no claim for salvage can be allowed. These principles, well established, seem to bar this claim so far as the first attempt of the Atlantic City is concerned. Admittedly, that attempt to render assistance to the disabled vessel was a failure, hence for that no salvage can be granted.

It has been assumed that the Golden Gate was in reasonable apprehension of danger at this time, but the evidence is not satisfactory on this point. The burden of proof is on the libelant, and it can hardly be said that it has been properly met. The opinion of witnesses on the part of the libelant are purely speculative, and in opposition thereto the naked fact remains that the Golden Gate laid for hours where she was hove to, securely held by her anchor, without encountering any peril other than the ordinary peril of the sea. But it is not necessary to express a positive opinion upon this part of the case. It is immaterial on the view which has been taken of the facts.

The second attempt to assist the Golden Gate was made under different circumstances. The Atlantic City was not in this instance a volunteer. She was expressly engaged by the owner of the Golden Gate to tow his disabled vessel to her wharf. Success is no longer a criterion for the allowance of salvage compensation; and, besides, it is admitted that this effort was partially successful. But the difficulty with the libelant's case is that there is not a particle of evidence that at the time of rendering this partial service the Golden Gate was in the slightest peril. The sea was quite calm; the wind greatly moderated; no danger was apparently hovering around the disabled vessel; she might be said to have been almost in her home port; her situation visible to all; no alarm felt by any one, least of all by those on board. Such circumstances would not justify a claim for salvage compensation. The services rendered by the Atlantic City were simply towage services. For such service she is entitled to fair compensation, but beyond that nothing.

It is proper to add that this is very nearly in the category of a stale claim. No demand was made until a year after the rendition of the alleged service, and even then seems to have been resurrected as a sort of counterclaim to a demand previously made upon the

owner of the Atlantic City by the owner of the Golden Gate. Evidently the service rendered was not regarded by the Atlantic City as especially meritorious, or entitled to salvage compensation, until pressed for the payment of a debt alleged to be due, as stated. It does not commend itself as a just and fair demand, under the circumstances.

If the parties cannot agree upon the amount to be paid for towage service, let there be the usual reference to ascertain what it ought to be.